## THE PEOPLE v. TORRES.

APPEAL from the District Court of San Juan, Section 2.

No. 475.—Decided November 26, 1912.

CRIMINAL LAW—DISTURBING PUBLIC PEACE—MALICE OR WILFULNESS—ASSAULT—SELF-DEFENSE.—Upon examining the evidence in the case at bar it was held that the appellant did not act maliciously or wilfully and that the acts which he committed were in self-defense to repel the unlawful assault made upon him by the other accused.

ID.—ASSAULT—SELF-DEFENSE.—According to sections 52 and 54 of the Penal
Code a person about to be injured may employ the necessary resistance to
prevent the offense attempted against his person, his family, or any member
thereof, and a person who is attacked is not required to flee or hide himself
or turn aside from the public streets to avoid his assailant.

The facts are stated in the opinion.

*Mr. Enrique Ponsa Parés* for appellant.

*Mr. Charles E. Foote, fiscal,* for The People.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In this case complaint was made in the Municipal Court
of San Juan against the appellant, Juan N. Torres, and one
Angel Orraca, for the offense of disturbing the peace by
maliciously and voluntarily participating in a scuffle, which
they mutually engaged in on June 2 last at the race track
in Santurce. The case came on for trial in the said municipal
court, and judgment was entered against the defendant, who
is here the appellant. From the municipal court an appeal
was duly taken to the District Court of San Juan, and on
July 5 last he was again convicted of disturbing the peace
and fined in the sum of $15 and costs, with the alternative
penalty of suffering one day's imprisonment for each dollar
of the fine remaining unpaid. A second appeal was taken
from the district court to this court, and the case is now
before us for consideration.

From the statement of the case filed herein we glean the
following facts:

Agustín Feliú, one of the witnesses, testified as follows:

"That he lives at No. 55 Sol Street and is acquainted with the
accused as well as with Angel Orraca; that on June 2 he saw them
at the race track, and that after one of the races, in which two
horses tied, Orraca said, 'I knew it; I knew those horses would tie,'
to which Torres responded, 'As you are an expert in these matters,'
which remark apparently annoyed Orraca, who answered, 'Not an
expert; I don't live off horse racing, and I have money in my pocket,'
eliciting the response from Torres, 'Nor I, either,' which occasioned
the further retort from Orraca, 'If you want any further explana-
tions come on outside'; that they left together, followed by a num-

ber of people, who, with witness, aided by the police, arrived and separated them; that no scuffle took place there, as the police interfered, and they retraced their steps, Orraca saying, 'We will see each other after the races,' to which Torres answered, 'As it suits you.' After the races I followed them, as I expected something would happen. Orraca invited Torres to accompany him to the café, and, on Torres' refusal, caught hold of the latter's shirt, ripping off three buttons. That a number of people who were coming from the races then congregated.

"Upon cross-examination by the defense, witness said that Orraca seized Torres by the shirt and assaulted him, Torres defending himself."

Juan Rivera, another witness, testified as follows:

"That he lives in Santurce and knows the accused by sight: that he remembers that June 2 fell on a Sunday, and that, while at the race track, the accused had a discussion with a person, whom he did not see in court, regarding some horses. That such person said to Torres 'that he knew that those horses were going to tie,' to which Torres replied, 'Then you are an expert in matters of horse records,' upon which the other rejoined 'that he was not an expert nor did he get his living from horse racing, that he had money in his pocket, and that if Torres wanted to know anything more he could come outside'; that the two left together, and after arguing awhile, returned; that when they were all finally leaving Orraca was standing in the road, and, on seeing Torres leave with many others, he invited him to come over to where he was, and on the refusal of Torres so to do he asked the latter to accompany him to the *cafetín*, which was likewise declined; that, as a result of these challenges, many persons congregated, among them the police, who asked witness if he had seen the disturbance, and then took notes.

"In reply to questions put by the defense, witness said that the scuffle occurred in the street that leads to and from the race track after they had left the latter and that such scuffle and attendant tumult originated from the words that had passed between the parties inside; that Orraca invited Torres to accompany him, and that on the latter's refusal he was assaulted by Orraca; that the police then presented themselves and made the corresponding charge."

This was all the evidence adduced on behalf of the prosecution.

Thereupon, the defendant, Juan N. Torres, in his own behalf, testified as follows:

"I can state only what has already been said by the other witnesses; it seems that Orraca deemed himself injured by my remark 'that he was an authority on horse records' and challenged me. He awaited me at the race-course exit and grabbed me by the shirt; I defended myself, and the police arrived while we had hold of each other."

No other evidence appears in the record.

The appellant in this case bases his appeal on the ground that the trial court did not properly estimate the force and effect of the proof presented on the trial, there being no sufficient evidence to sustain the offence charged against him in the complaint.

The appellant also claims that the proof shows that whatever he did in regard to the matter and whatever part he took in the disturbance on which the prosecution was based was strictly in line with his rights of self-defense, and that he did not maliciously and voluntarily disturb the peace and tranquility of the neighborhood or engage in a scuffle.

According to the Penal Code, section 559, paragraph 4, the words "malice" and "maliciously" denote the committing of a wrongful act intentionally, without any just cause or excuse, and the first paragraph of the same section defines the word "wilfully" when applied to the intent with which an act is done, to imply simply a purpose or willingness to commit the act.

From a reading of the evidence heretofore set out, it plainly appears that the appellant did not act wilfully and maliciously; but, at the most, whatever he did was only in defense of his person against the unlawful attack by his codefendant, Orraca. It is not necessary in this case to enlarge upon the right of self-defense, which is guaranteed to every citizen by the general law of the land, especially by section 52 of our Penal Code, which declares that sufficient

resistance may be made by any party about to be injured to prevent the offense attempted to be committed upon him or against his person, or his family, or some member thereof. It is true that by section 54 of the same code this right is limited to the infliction of no more harm than is necessary for the purpose of defense. Torres, while he ought not to provoke an attack, had a right to defend himself against an attack on the part of Orraca, and was not required to flee or hide himself, or turn aside from the public streets to avoid his assailant; but, when the evidence is closely examined, it will be seen that testimony is entirely lacking to show that he even raised a finger in the way of aggression, or that he said a word that might be considered as violent or provocative of a disturbance of any kind.

Then, inasmuch as the facts presented herein do not warrant the judgment rendered by the court below, the same should be reversed and the accused should be acquitted.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.